IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | 3-01-CR-360-P |
| | ) | (3-04-CV-660-P) |
| UZO CHRISTOPHER NWANKWO | ) | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B) and (C), and the District Court's order of reference filed on March 31, 2005, the § 2255 motion filed by Defendant Uzo Christopher Nwankwo was referred to the undersigned magistrate judge for report and recommendation.

**Statement of Case**: Upon his pleas of not guilty to the offenses alleged in the three-count indictment filed in No. 3-01-CR-360-P, Movant was tried by a jury which returned guilty verdicts on all counts. He was thereafter sentenced to 88 months imprisonment with a five-year term of supervised release. Defendant effected a direct appeal from his convictions, but ultimately moved for voluntary dismissal of the same, which was granted by the Fifth Circuit on March 31, 2003. He filed the present § 2255 motion on March 31, 2004.

**Findings and Conclusions:** On October 6, 2005, an evidentiary hearing was held at which Defendant appeared in person and by counsel and the government appeared by its attorney, Assistant United States Attorney Angie L. Henson.[1] The court received the testimony of Defendant's

---

[1] At the evidentiary hearing Defendant's counsel orally moved to amend his motion to include a Booker claim. The magistrate judge sustained the government's objection on the basis that consideration of such a claim was time-barred. See Evidentiary Hearing Record at 4-5. Subsequent to the hearing the Fifth Circuit has held, consistent with all other circuits which have considered the issue, that Booker-FanFan claims are not cognizable in post-conviction proceedings. See United States v. Gentry, ___ F.3d ___, 2005 WL 3317891 at *6 (5th Cir. 2005).

brothers, Samuel Nwankwo and Joseph Nwankwo; Defendant's wife, Euphemia Onyeonoro; Defendant, himself; William D. Cox, III, Defendant's trial attorney; Special Agent Patrick Smith; and Assistant United States Attorney Suzanna Etessam (formerly Suzanna Sanchez), the prosecutor at Defendant's trial. In addition, documentary evidence was presented and received by the court. The court has also reviewed and considered relevant portions of the record previously filed in this case. Based upon the credible evidence presented, the magistrate judge finds and recommends as follows:

1. **Trial counsel's alleged failure to pursue a plea bargain**. In support of his claim that Mr. Cox rendered ineffective assistant of counsel in failing to attempt to obtain a plea agreement with the government in exchange for a guilty plea Defendant presented his own testimony and that of his brothers and wife.

These witnesses testified about matters which were discussed with Mr. Cox at his office in the week which preceded Defendant's trial on February 6, 2002. Defendant was not present since he was confined at the Seagoville, F.C.I. jail facility under a pretrial detention order.

The credible evidence establishes that two topics were discussed or raised in the course of this meeting with Defendant's family members - (1) whether the government would allow Defendant to plead guilty pursuant to a plea agreement and (2) the relative strength of the government's case.

Each family member testified that Cox expressed great confidence in obtaining an acquittal, relating that it would be a "piece of cake." While the court finds it credible that the strengths and weaknesses of the case were discussed, the court does not find it credible that Mr. Cox gave any assurance that an acquittal was extremely likely.

There is no evidence to suggest that Defendant, himself, was not aware of the evidence which the government was prepared to marshall at trial. Cox testified credibly that he and Marcus Norman, a second attorney whom Defendant retained, discussed the evidence with him, in response to which Defendant professed his innocence. See Evidentiary Hearing Record at 85. In addition to these discussions Defendant and his brother, Samuel, received a rather thorough preview of the government's evidence in the course of Defendant's preliminary hearing held before Magistrate Judge Jeff Kaplan on November 8, 2001, prior to the grand jury's bill of indictment. See Volume 2, Record on Appeal.

The evidence of Defendant's guilt was not conclusive, there being no direct evidence of his knowledge that his co-Defendant, Alice Faye White, was attempting to bring heroin into the United States from Ecuador. However, the circumstantial evidence was strong, particularly if Ms. White's trial testimony were to be found credible by the jury, a fact which Mr. Cox fully appreciated.

There is no contradictory evidence as it relates to discussions about a possible plea agreement. Consistent with Defendant's family members' request that this issue be explored, Cox met with Defendant at Seagoville after he met with his family, at which Cox broached the subject of pursuing a plea agreement with the government.

At this juncture it is pertinent and material to Defendant's first ground to note and find that no plea agreement offer was ever tendered to Defendant's counsel by the government. Defendant sponsored two exhibits at the evidentiary hearing, Movant's Exhibits 3 and 4, which he obtained following his trial pursuant to a Freedom of Information Act request served on the United States Attorney for the Northern District of Texas. Apparently these pro forma documents, a plea agreement and a factual resume, were created by the Assistant United States Attorney at some time

3

prior to Defendant's trial. However, the credible evidence is that these documents were never served on Defendant's attorney and that the government never offered an agreement to Defendant consistent with the terms of Movant's Exhibit 3. See Evidentiary Hearing Record at 99 and 72. In fact, the absence of a written plea agreement offer is corroborated by Defendant's own testimony. Id. at 50.

The credible testimony of Mr. Cox as it related to the possibility of a negotiated plea shows that from the time Cox entered his appearance in the criminal case until he was discharged, Defendant consistently and persistently claimed he was not guilty of the offenses charged, even when Cox confronted him with the evidence which the government intended to present at trial. As a matter of practice, when a client has indicated a willingness to accept a plea bargain, Cox communicates with the prosecutor in an effort to pursue the possibility at an early stage. Id. at 73. However, given Defendant's protestation of innocence, he never initiated such efforts with the United States Attorney's office and the issue of a negotiated plea agreement was not discussed with Defendant until the weekend before the trial.

At the jail conference Cox told Defendant that if he wanted to enter a plea agreement, he would contact the prosecutor over the weekend. Id. at 47-48. Defendant, himself, refused to provide any terms under which he would plead guilty. Id. at 49. He also refused to consider any possible agreement unless it was in writing. In addition, I find credible Mr. Cox's testimony that Defendant never expressed an interest in pleading guilty up through the end of trial. Id. at 84.

At all times Cox's conduct was consistent with constitutional standards in representing a defendant who at all times claimed to be not guilty. In light of Defendant's wishes to contest the

4

charges and the absence of any desire to enter into a negotiated plea of guilty, he is not entitled to relief on his first ground.

**2. Trial counsel's alleged failure to inform Defendant of his right to testify in his own behalf.** The evidence presented at the evidentiary hearing is consistent insofar as it establishes that Mr. Cox advised Defendant not to testify as a witness at trial. Evidentiary Hearing Record at 37 and 74. However, there is conflicting evidence as to whether Defendant was informed that he had the right to testify. In resolving this conflict the court finds that Mr. Cox's testimony is credible and that having been apprised of his right to testify Defendant elected to follow his attorney's advise that he not testify.

Cox's advice that Defendant not exercise his right to testify was clearly consistent with an attorney's constitutional obligations. The evidence which the government presented at trial, and particularly the testimony of co-Defendant Alice White (See Trial Transcript, Statement of Facts at 235-407) painted a picture of a frequently used method for bringing contraband into the United States.

Major participants in smuggling operations commonly recruit indigent or financially-strapped females to travel outside the United States to obtain drugs and return with the drugs for delivery. Such drug couriers are commonly referred to as "mules" in the parlance of drug trafficking. The couriers are provided with minimal information so that in the event they are arrested in possession of drugs they have limited knowledge about those who played larger roles in the conspiratorial activities.

Defendant's admissions at the time of his arrest connected him with Ms. White. Had he chosen to testify he would have been subjected to cross-examination seeking his explanations for

a number of highly suspect circumstances such as the identity of the person to whom he spoke while Ms. White was in Ecuador, why he recruited her for foreign travel when he hardly knew her, why he purchased the platform shoes in which the heroin was found and why he was so insistent in instructing her to deliver the shoes to "Emanuel" in Ecuador and to wear the shoes when she returned to the United States rather than putting them in the duffel bag which he purchased before her second flight to Ecuador.  Had the jury determined that his explanations for these and other questionable circumstances were not credible, it could have drawn an inference of guilty knowledge. Further, false answers to questions under oath could have resulted in an enhancement of the penalty range for obstruction of justice when he was sentenced on the jury's verdict.

**3. Trial counsel's ineffective assistance in presenting Defendant's post-trial assistance prior to sentencing.**  Following the jury's verdict Mr. Cox arranged a conference with the prosecutor, Ms. Sanchez, and the case agent, Patrick Smith, for the intended purpose of giving Defendant the opportunity to provide information with respect to the identity of other persons involved in the heroin importation conspiracy.[2]

The only advice that which Cox gave Defendant prior to the meeting was that he needed to tell the truth in response to questioning if he wanted to gain the government's assistance in seeking a reduction of sentence.  Although there is no evidence as to the precise questions which were presented to Defendant at this meeting, it is clear that the prosecutor quickly concluded that Defendant was not truthful in his answers, an opinion shared by Mr. Cox.  As a result Ms. Sanchez

---

[2]At trial Ms. White testified that the initial plan was for her to return to the United States, traveling to Washington, D.C. where, according to Defendant, she was to turn the shoes over to people there who would recognize her.

terminated the meeting and advised that the government would not file a motion for downward departure. Shortly after this meeting Defendant discharged Cox as his counsel and retained Marcus Norman, who had previously represented him at the preliminary hearing. Mr. Norman attended the meeting with a United States Probation Officer in conjunction with Defendant's post-trial interview and represented him at the sentencing hearing. The fact that Defendant received no assistance from the government based upon cooperation was solely a product of Defendant's own conduct.[3]

**4. Denial of right to appeal.** The essence of this ground is that Defendant dismissed his appeal upon the representation by Special Agent Smith that such was a condition precedent to any effort by the government to get his prison sentence reduced.

The record reflects that although Defendant's initial timely appeal was dismissed for want of prosecution, it was subsequently reinstated after Christian Thomas Souza was appointed as appellate counsel under the Criminal Justice Act. See Fifth Circuit's order dated October 1, 2002, in Appeal No. 02-10537. Mr. Souza subsequently filed a motion for voluntary dismissal in the circuit court on March 27, 2003, and the Fifth Circuit dismissed his direct appeal on March 31, 2003.

At the evidentiary hearing Defendant testified that he instructed Mr. Souza to move to dismiss his appeal based upon Agent Smith's post-conviction statement that the government would not provide assistance unless he dropped his appeal. Evidentiary Hearing Record at 41-43. Ms. Onyeonoro testified to having had a similar conversation with Agent Smith. Id. at 24. Although there is credible evidence in the record which establishes that post-sentencing communications took

---

[3] To the extent that Defendant may be arguing that Mr. Cox should have proffered a willingness on Defendant's part to cooperate prior to his trial, no basis for relief is presented. As noted above, the credible evidence presented shows that at all times prior to trial Defendant claimed to be innocent and refused to initiate through counsel any basis for a potential negotiated guilty plea.

7

place between Defendant and Agent Smith, their testimony that dismissal of Defendant's appeal was required before any assistance from the government would be forthcoming is not credible and is rejected.

Defendant called Agent Smith on at least one occasion in an effort to provide additional information. See Defendant's Hearing Exhibit 6 reflecting a call on July 22, 2002. Defendant provided Smith with a number for a telephone located in the Washington, D.C.-Baltimore area. Hearing Record at 89, and two names - Bob or Tong. Id. at 91. However, the credible evidence establishes that Smith never discussed Rule 35 with Defendant. Id. at 92. There came a time when Smith learned that Defendant had counsel on appeal and he was instructed by Ms. Sanchez not to have any further communications during the pendency of the appeal. Smith may have informed Defendant or his wife that he could not speak with Defendant while he was represented by counsel. Id. at 93,[4] but no discussions with respect to Rule 35 took place. Therefore, no basis for relief is presented.

RECOMMENDATION:

For the foregoing reasons it is recommended that Defendant's § 2255 motion be in all things

---

[4] The only documented phone call took place after Defendant was sentenced on April 25, 2002, but prior to Mr. Souza's appointment on August 21, 2002. Any statement which Smith may have made concerning his refusal to speak further with Defendant while he was represented by counsel is wholly consistent with ethical and legal standards. However, any further statements attributed to Agent Smith are either the product of Defendant's and his wife's faulty memories or are simply false.

8

denied and dismissed.

SIGNED this 17th day of January, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within twenty (20) days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such twenty-day period may bar a de novo determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.